FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 05 2011

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK DIVISION

**BRIAN SCHWAB, D.O.**                                                    **PLAINTIFF**

**VS.**                          CASE NO. 4:11 cv11 BSM

UNIVERSITY OF ARKANSAS; BOARD OF
TRUSTEES OF THE UNIVERSITY OF ARKANSAS,
A PUBLIC BODY CORPORATE; B. ALLAN SUGG          This case assigned to District Judge Miller
IN HIS OFFICIAL CAPACITY AS PRESIDENT OF        and to Magistrate Judge Kearney
THE UNIVERSITY OF ARKANSAS; UNIVERSITY
OF ARKANSAS, BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS FOR MEDICAL
SCIENCES; DANIEL RAHN, M.D., IN HIS OFFICIAL
CAPACITY AS CHANCELLOR OF THE UNIVERSITY
OF ARKANSAS FOR MEDICAL SCIENCES; DEBRA
FISER, M.D., IN HER OFFICIAL CAPACITY AS DEAN
OF THE COLLEGE OF MEDICINE AT THE
UNIVERISTY OF ARKANSAS FOR MEDICAL SCIENCES;
MUHAMMED JAFFAR, PROFESSOR AND RESIDENCY
DIRECTOR FOR THE UNIVERSITY OF ARKANSAS
FOR MEDICAL SCIENCES, IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY; and CHARLES A. NAPOLITANO,
PROFESSOR AND PROGRAM DIRECTOR, IN HIS OFFICIAL
AND INDIVIDUAL CAPACITY OF THE UNIVERSITY
OF ARKANSAS FOR MEDICAL SCIENCES                              **DEFENDANTS**

### COMPLAINT

The Plaintiff, **Brian Schwab, D.O.**, respectfully comes before this Court, by and through

his attorneys Chisenhall, Nestrud & Julian, P.A., and for his cause of action against the

Defendants, states and alleges:

## I.   JURISDICTION

1.      This is an action claiming discrimination and retaliation in employment pursuant

to the Americans with Disabilities Act (hereinafter referred to as ADA), 42 U.S.C. 12101, et seq.

as amended by the Americans with Disabilities Act Amendment Act of 2009.

2.      This action also seeks to redress violations of Section 504 of the Rehabilitation

Act of 1973 (Section 504) and Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibit discrimination on the basis of disability in the provision of educational opportunities.

3.      This action is one alleging violations of Plaintiff's constitutional rights under authority of 42 U.S.C. § 1983 including specifically, Plaintiff's claim that he was denied due process and equal protection of the law.

4.      The action is also brought for damages for breach of contract.

5.      Jurisdiction is invoked upon this Court pursuant to 28 U.S.C. Sec. 1343.  Venue is proper in this Court pursuant to 42 U.S.C. Sec. 2000e-5(f)(3).

6.      Pendent jurisdiction is also invoked to consider the claims of civil rights violations under the Arkansas Civil Rights Act.  Plaintiff brings ancillary causes of action brought pursuant to 28 U.S.C. §1367.  Plaintiff is also seeking declaratory relief pursuant to 28 U.S.C. §2201, equitable relief in the form of instatement into the position which he should have held but for discrimination and retaliation or front pay in lieu of being instated to the position in which he should have been placed.

II.    **PARTIES**

7.      Plaintiff Brian Schwab, D.O., is a resident of New York. He is a licensed physician.

8.      Defendant University of Arkansas (hereinafter "UofA") is an agency of the State of Arkansas.   Defendant Board of Trustees of the University of Arkansas is a public body corporate, and Defendant Board of Trustees of the University of Arkansas for Medical Sciences is a public body corporate.  The University of Arkansas for Medical Sciences (hereinafter "UAMS") was established as a department for the University of Arkansas and is a part of the

state's higher education system.

9.      Dr. Allan Sugg, is president of the University of Arkansas.   Daniel Rahn, M.D. is Chancellor of the University of Arkansas for Medical Sciences; Debra Fiser is Dean of the College of Medicine of the University of Arkansas for Medical Sciences and was the final decision-maker in the acts complained of herein by Plaintiff.   Muhammed Jaffar is a Professor and the Residency Director for the University of Arkansas for Medical Sciences.   Charles A. Napolitano is a Professor and Program Director for the University of Arkansas for Medical Sciences.

## III.     STATEMENT OF FACTS

10.      At all relevant times hereto, Plaintiff was a resident physician and employed by Defendant UAMS working at the Little Rock campus of the UAMS.   In his position, he was an employee of UAMS as well as a medical student.

11.      Plaintiff was accepted into the Anesthesiology residency program at UAMS for the 2009 program year (PGY-1).   He entered into a written agreement with Defendants.

12.      Upon entry into the program, Plaintiff disclosed that he is an American with a Disability and completed a written medical disclosure which described his disability and the treatment for his disability.   Plaintiff suffers with adult ADHD.   Defendants were aware of the disability and had observed symptoms sufficient to place them on notice of the disability. Defendant Jaffar had described Plaintiff as "potentially depressed and out of it" as early as November 2009.

13.      In January 2010, Plaintiff was subjected to harassment because of his disability during a surgical rotation.   The harassing acts included being humiliated in a public manner, being yelled at, cursed at, being forced to work excessive hours in a hostile work environment

created by UAMS.

14.     Plaintiff reported the harassment and requested relief from the harassment. He requested help in the rotation. In response to the report, Plaintiff was told by Defendant Jaffar and Napolitano, that he just needed to toughen up, or words to that effect.

15.     He requested a reasonable accommodation for his disability multiple times.

16.     Defendants did not investigate Plaintiff's complaint of harassment nor did they take any remedial action.

17.     On February 2, 2010, Defendants re-appointed Plaintiff to the second year of his residency (PGY-2). The letter agreement is attached hereto as Exhibit 1.

18.     On March 10, 2010, Defendants Jaffar and Napolitano, met with Plaintiff citing performance-related issues. The performance related issues were subjective comments from attending physicians which relate to or derive from Plaintiff's disability, such as "disinterest in learning, a lack of empathy for patients and their families, and a disrespectful attitude toward faculty-attending physicians."

19.     On March 18, 2010, Defendants Jaffar and Napolitano, immediately dismissed Plaintiff from the residency program, terminated his appointment, and refused to award any academic credit for Plaintiff's program work to that date. The termination letter is attached hereto as Exhibit 2.

20.     According to Defendants' Graduate Medical Education Policy 1.420, immediate dismissal is only warranted in very limited circumstances of "gross misconduct" including theft of money or property, physical violence, or being under the influence of alcohol or controlled substances while on duty.

21.     Plaintiff had not committed any of the infractions which would warrant

-4-

immediate dismissal.

22.     Immediate dismissal is stigmatizing.

23.     Plaintiff was not given notice of the charges which led to his dismissal or an opportunity to be heard prior to his immediate dismissal, except he met with Defendants Jaffar and Napolitano on March 10, 2010 to discuss possible academic remediation plans. He was given no written notification nor was he given any opportunity for improvement.

24.     The decision to terminate Plaintiff and immediately dismiss him from the residency program was the result of a vote by the Graduate Medical Education Committee, with whom Plaintiff never met, nor was given an opportunity to be heard. GME governing policy requires that "when performance or conduct is considered sufficiently unsatisfactory that dismissal is being considered, the Program Director shall notify the resident with a <u>written statement</u> to include: a. reasons for the proposed action; b. the appropriate measures and timeframe for satisfactory resolution of the problem(s).

25.     Plaintiff timely filed a grievance under the University Grievance Policy, 1.410, regarding his termination and immediate dismissal.

26.     A grievance panel appointed by Defendants, heard Plaintiff's grievance on June 16, 2010, and recommended his reinstatement to the program, reversing his dismissal. At the grievance hearing, Plaintiff again requested he be provided with a reasonable accommodation upon his reinstatement.

27.     On June 30, 2010, Defendant Fiser accepted the grievance panel's recommendation and directed he be reinstated.

28.     On July 2, 2010, Plaintiff again requested a reasonable accommodation.

29.     Defendants Jaffar and Napolitano, however, proposed to reinstate Plaintiff with

the requirement that he receive no credit for his 8 months of work prior to his dismissal and that he complete additional rotations under a 6 month probationary period.

30.     Defendants Jaffar and Napolitano met with Plaintiff via telephone on July 6, 2010, and discussed various requests for accommodations, the reinstatement conditions and informed Plaintiff he would have to enter the probationary reinstatement no later than August 1, 2010.

31.     Plaintiff objected to the proposed probationary reinstatement, proposed accommodations, and lengthening of his PGY-1 year, which would have effectively precluded him from moving into a PGY-2 year class for another year.

32.     Plaintiff again requested in writing a reasonable accommodation on July 16, 2010.

33.     Defendants responded that it would follow the AGCME guidelines, which it was obligated to follow for any student, but rejected Plaintiff's additional requested accommodations.

34.     Because the reinstatement terms and denial of reasonable accommodations requests were discriminatory against Plaintiff based upon his disability and retaliatory exercise of protected rights, Plaintiff did not return to the program.

35.     Plaintiff did not receive credit for the PGY-1 year.

36.     Plaintiff was unable to enter into a comparable residency program because of his termination and the timing of his termination.

37.     Plaintiff was unable to enter into an anesthesiology program and will be unable to in the future.

38.     The disability discrimination Plaintiff suffered, the failure by Defendants to accommodate Plaintiff's disability, and the retaliation Defendants took against Plaintiff for exercising his rights under the ADAAA as well as Section 504 of the Rehabilitation Act, have

caused Plaintiff to suffer economic loss to date, which will continue throughout his medical career.

39.     Plaintiff's disability was a motivating factor in the decision taken against him in his employment with Defendants as well as in the provision of educational opportunities.

40.     Despite Plaintiff's complaint about being discriminated against on the basis of his disability, Defendant UAMS did not undertake an investigation to determine whether his disability was a motivating factor in adverse actions taken against him.

41.     By background, education, and training Plaintiff was capable of performing the essential functions of his job either with or without a reasonable accommodation.

42.     Those persons without disabilities were treated more favorably.

43.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission.  The charge of discrimination is attached as Exhibit 3.  He received a right to sue from the EEOC.  This letter is attached as Exhibit 4.

IV.     VIOLATIONS OF LAW

COUNT I -- Disability Discrimination

44.     At all times, Defendants were an employer within the meaning of the Americans with Disabilities Act as amended and was subject to the provisions of the ADAAA.  Defendants were also subject to the provisions of Section 504 of the Rehabilitation Act.

45.     At all times, Plaintiff was an American with a Disability covered by the ADA and ADAAA.

46.     Plaintiff notified Defendants of his disability, complained of disparate treatment based upon a hostile work environment, and requested reasonable accommodations.

47.     Defendants violated Plaintiff's rights to be free from discrimination in

employment based upon his disability.

48.     Defendants made employment decisions on the basis of Plaintiff's disability in violation of the ADA, ADAAA, Section 504 of the Rehabilitation Act, and the Arkansas Civil Rights Act.

### COUNT II – Failure to Provide Reasonable Accommodations

49.     Defendants failed to provide reasonable accommodations to Plaintiff even after being made aware of Plaintiff's disability, which disability was obvious.

50.     Defendants failed or refused to enter into an interactive process in a timely manner with Plaintiff to address his requests for a reasonable accommodation.

51.     Defendants failed or refused to provide reasonable accommodations to Plaintiff even after it entered into an interactive process.

### COUNT III – Retaliation for Exercise of a Protected Right

52.     Defendants retaliated against Plaintiff by taking adverse actions against him after he exercised a federally protected right in complaining of employment and educational discrimination and requested reasonable accommodations.

53.     The adverse actions were reasonably related to the exercise of a federally protected right.   Such retaliation is in violation of the ADA, ADAAA, Section 504 of the Rehabilitation Act, and the Arkansas Civil Rights Act.

54.     Defendants, specifically Defendants Jaffar and Napolitano, retaliated against Plaintiff for exercising a constitutionally protected right protected by state law, Ark. C. Ann. §21-1-503 et seq.

55.     Defendants Jaffar and Napolitano are liable in their individual capacities for retaliation prohibited under the Arkansas Civil Rights Act.

**COUNT IV – Violation of Constitutional Rights**

56.     At all relevant times, there was in full force and effect, 42 U.S.C. § 1983, which prohibited the deprivation of rights to persons such as the plaintiff, when under color of state law.  That the actions and inactions of Defendants were taken under color of state law, and were in derogation of the Equal Protection rights of the plaintiff, in that Plaintiff's disability was the unjustified motivating factor in the adverse actions taken against him.  Further, Defendants violated Plaintiff's rights to Free Speech, on that Plaintiff's anti-discrimination complaints were an unjustified motivating factor in the decision to terminate him and to reinstate him only under punitive terms.

57.     Plaintiff asserts that the Defendants denied Plaintiff Due Process and Equal Protection.  Plaintiff was entitled to be given written notice, according to Defendants mandatory policies, prior to his termination and dismissal from the residency program.  Defendants failed to give him the process afforded to him by the State of Arkansas and its constitution, as well as the U.S. Constitution.

58.     Plaintiff was denied equal treatment under the laws and policies that govern the Defendant's conduct based upon his status as a Disabled American.

59.     Plaintiff was denied equality of educational opportunity, for purposes of state constitutional equal protection requirements, by Defendants failure to include as basic components substantially equal curricula, substantially equal facilities, and substantially equal equipment for obtaining an adequate education to him because of his status as disabled. Const. Art. 2, §§ 2, 3, 18.

**COUNT V – Breach of Contract**

60.     Plaintiff entered into a contract with Defendants for his PGY-1 term which was

subject to the terms and conditions set forth in the Resident Handbook. Defendants offered, and Plaintiff accepted a second term for his PGY-2 term, but Defendants failed or refused to produce the fully executed contract.

61.     Defendants breached the terms of the written contract.

62.     Defendants breached the implied covenant of good faith associated with the contract for PGY-1 and PGY-2.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

63.     As stated *supra*, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The issuance of the EEOC's right to sue completes the administrative review and Plaintiff has exhausted administrative remedies.

## VI.    PRAYER FOR RELIEF

64.     As relief for the above described violations, Plaintiff requests that this Court:

a.      Grant a declaratory judgment that the actions taken against Plaintiff were discrimination in violation of the ADA, ADAAA, and Section 504 of the Rehabilitation Act;

b.      Grant a declaratory judgment that the actions taken against Plaintiff were in retaliation for his exercise of a protected right and in violation of the ADA, ADAAA, and Section 504 of the Rehabilitation Act;

c.      Grant a declaratory judgment that the actions taken against Plaintiff were discrimination and retaliation in violation of the Arkansas Civil Rights Act;

d.      Grant a declaratory judgment that the actions taken against Plaintiff were in violation of his constitutional rights to Due Process and Equal Protection, and in violation of his rights arising under the Arkansas Constitution, and Section 504

of the Rehabilitation Act;

e.      Award Plaintiff him back pay, front pay, pre-judgment interest, post-judgment interest, attorney's fees, costs, and other such sums as will make him whole for the unlawful actions taken against him and instate him into the position he should have been in but for the illegal discrimination and retaliation against him;

f.      Grant Plaintiff injunctive relief including instating him to the residency position with proper credit for academic progress and enjoining Defendants from any further acts of discrimination and retaliation against her;

g.      Award Plaintiff damages for violation of his Constitutional rights and violation of his rights protected under the Arkansas Constitution and state statutes.

h.      Award Plaintiff compensatory damages for pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life due to the illegal acts taken against him;

i.      Award Plaintiff punitive damages for malice and reckless indifference to his federally and state protected rights;

j.      Grant Plaintiff a trial by jury.

                          Respectfully submitted,

                          **BRIAN SCHWAB, D.O.**

          **BY:**     _____
                          **DENISE REID HOGGARD, Bar No. 84072**
                          **Chisenhall, Nestrud & Julian, P.A.**
                          400 West Capitol Ave., Suite 2840
                          Little Rock, Arkansas 72201-3415
                          (501) 372-5800 Telephone
                          (501) 372-4941 Fax

—11—

# UAMS

## COLLEGE OF MEDICINE

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES

**James A. Clardy, M.D.**
Associate Dean
Graduate Medical Education
ACGME Designated
Institutional Official

February 2, 2010

**ACADEMIC AFFAIRS**

4301 West Markham, #837
Little Rock, AR 72205-7199

501-296-1159
501-686-5873 (fax)
email: jaclardy@uams.edu

Dear Housestaff Member:

Congratulations on your appointment for the next academic year of your residency/fellowship program. Accreditation requirements specify that you must be supplied with and verify the information enclosed in this packet. In addition, you must complete the web-based Annual GME Survey. You will receive emails from Survey Monkey in the spring with a link to the survey.

Mrs. Dwana McKay, Assistant Dean for Housestaff Affairs, and I have worked with your program coordinators to make this annual registration process as efficient as possible. All forms in this packet must be completed and returned to Mrs. McKay as soon as possible but no later than **March 1, 2010**. Residents/fellows who return the forms by the designated deadline will receive the increases in stipends for the next PGY level in the July paychecks.

Please read and review the materials enclosed, complete and sign all requested forms, and return them to your program coordinator who will ensure that they are delivered to the Housestaff Office by March 1, 2010. If you have concerns or questions, please contact Mrs. Dwana McKay or me. I regret the bulk of information in the packet but appreciate your continued cooperation as we comply with all of the requirements for accreditation of your residency/fellowship program.

The College of Medicine Resident Handbook is available in electronic format located on the GME Home Page at www.uams.edu. Click on Education, College of Medicine, for residents and Graduate Medical Education to locate the handbook. Or, you may access it directly by www.uams.edu/gme/toc.htm. It will be important that you access this handbook periodically to stay informed about issues that affect you. Policies are updated periodically during the year. At these times, you will be notified of the new policy; it will be posted on the website and become effective at that time. The Table of Contents of the Resident Handbook on the website is enclosed for your review.

Sincerely,

James A. Clardy, M.D.
Associate Dean for Graduate Medical Education


EXHIBIT
1

GME\ORIENT\returning packet\cor.doc

*Arkansas Children's Hospital (ACH) and the Central Arkansas Veterans' Healthcare System (CAVHS) are comprehensive clinical, teaching and research affiliates of the College of Medicine at the University of Arkansas for Medical Sciences. UAMS faculty physicians and surgeons are on staff at ACH and CAVHS.*




# UAMS

## COLLEGE OF MEDICINE
### DEPARTMENT OF ANESTHESIOLOGY

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES

March 18, 2010

Brian Schwab, DO
PGY-1 House Staff

Dear Dr. Schwab:

On Wednesday March 10, 2010, Dr. Jaffar and I met with you to discuss performance-related issues that had occurred during your most recent General Surgery rotation at CAVHS. Following that meeting, further documentation was received from the General Surgery staff as well as the VA Cardiology staff. The Clinical Competence Committee of the Department of Anesthesiology met to review evaluations from your VA General Surgery rotation, evaluations from your VA Cardiology rotation, as well as evaluations from previous rotations. Although Dr. Jaffar and I presented a possible remediation program to the Clinical Competence Committee, the Committee decided, based upon further discussion and review of your academic performance during the 2009-2010 year to date, to terminate your appointment. The Committee's decision stems from your behavior noted by attending staff and physicians: a display of disinterest in learning, a lack of empathy for patients and their families, and a disrespectful attitude toward faculty-attending physicians. All of these demonstrable behaviors fail to meet the ACGME Competencies of professionalism, patient care, and medical knowledge. Based upon the Clinical Competence Committee's review, its decision to terminate your appointment for cause is effective immediately.

Under the UAMS's institutional policy for "dismissal," the condition under which a resident leaves a program dictates whether or not academic credit may be awarded upon dismissal. As the Committee is terminating your residency for poor academic performance reasons, I can award you no credit for your academic work here at UAMS during the past year.

We regret to inform you of this decision by the Committee, but the decision was made in the interests of the Department of Anesthesiology, the medical profession and patient care.

Sincerely,

Charles A. Napolitano, MD, PhD
Professor and Program Director
Department of Anesthesiology

Muhammad Jaffar, MD, FACCM
Professor and Residency Director
Chairman, Clinical Competence Committee
Department of Anesthesiology

Received by:   Brian Schwab, DO                                   Date



EXHIBIT
2

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | 493-2010-01304 |
| x | EEOC | |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) Brian Schwab, D.O. | HOME TELEPHONE (Include Area Code) (484) 695-1010 |
|---|---|
| STREET ADDRESS 1164 Municipal Rd CITY, STATE AND ZIP CODE Lehighton PA 18235 | DATE OF BIRTH |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME    University of Arkansas Medical Sciences | NUMBER OF EMPLOYEES, MEMBERS   500+ | TELEPHONE (Include Area Code) (501)686-535- |
|---|---|---|
| STREET ADDRESS 4301 W. Markham St. #550   CITY, STATE AND ZIP CODE Little Rock, AR 72205 | | COUNTY Pulaski |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| STREET ADDRESS    CITY, STATE AND ZIP CODE | COUNTY |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

| | | | | DATE DISCRIMINATION TOOK PLACE EARLIEST |
|---|---|---|---|---|
| [ ] RACE | [ ] c SEX | [ ] RELIGION | [ ] AGE | July 21, 2010 |
| [x] RETALIATION | [ ] NATION o | [x] DISABILITY | [ ] OTHER (Specify) | [ ] CONTINUING |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):
I was employed as a resident in a PGY-1 year with Respondent from July 2009 through March 18, 2010, when I was terminated. I was told the reason for my termination was my academic performance.
I suffer with adult ADHD and disclosed my disability to Respondent in July 2009. I was able to perform the duties of my position. During January 2010, I was subjected to harassment because of my disability during a surgical rotation. I reported the harassment and requested relief from the harassment. I requested a reasonable accommodation for my disability multiple times. I filed a grievance to be reinstated into PGY-1. I was ultimately offered opportunity to return under onerous conditions. Respondent did not investigate my complaint or provide a reasonable accommodation.
I believe I was subjected to illegal discrimination and harassment in violation of the Americans with Disabilities Act Amendment Act, and was subjected to illegal retaliation for having exercised rights under the ADAAA.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedure. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date            Charging Party (Signature) | |

RECEIVED
AUG 06 2010
U.S. EEOC
LMAO

EXHIBIT
3

PRIVACY ACT STATEMENT: Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   FORM NUMBER/TITLE/DATE. EEOC Form 5, Charge of Discrimination (11/09).

2.   AUTHORITY. 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   PRINCIPAL PURPOSES. The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   ROUTINE USES. This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION. Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please notify EEOC or the state or local agency where you filed your charge if retaliation is taken against you or others who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  Brian Schwab<br>1154 Municipal Rd.<br>Lehighton, PA 18235 | From:  **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |

| | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2010-01204 | **Chris E. Stafford,**<br>**Investigator** | **(501) 324-5812** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_____

**William A. Cash, Jr.,**
**Area Office Director**

**OCT 0 7 2010**

*(Date Mailed)*

Enclosures(s)

cc:    **Charles White**
**Asst. Vice Chancellor**
**UAMS**
**4301 W. Markham**
**Little Rock, AR 72205**

**EXHIBIT**
**4**

Enclosure with EEOC
-Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS  --  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS  --  **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION  --  **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE  --  **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*