IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

**BRIAN SCHWAB**                                                                                       **PLAINTIFF**

VS.                                            CASE NO. 4:11-cv-11 BSM

**BOARD OF TRUSTEES OF THE**
**UNIVERSITY OF ARKANSAS, et al.**                                            **DEFENDANTS**

### DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF MATERIAL FACTS IN DISPUTE

Come now the Defendants, by and through their counsel, Associate General Counsel Mark A. Hagemeier, and for their Response to Plaintiff's Supplemental Statement of Material Facts in Dispute (D.E. # 26) state:

1.  Whether Dr. Schwab made his disability known to Defendants. Dr. Schwab disclosed his ADHD and that he took Adderall for the condition in a medical history form he completed and provided to the Anesthesiology residency program director's office when he first entered the program. (Ex. 6, Schwab Depo. At 43). The medical history form was destroyed by Defendants. (Ex. 2, Clardy Depo. At 24).

    Response: This is not a statement of fact, but a legal argument. The following facts/statements contradict Dr. Schwab's position. Further, Schwab admitted that he did not know how the medical questionnaire was utilized.

    Q:   When you were inprocessing as a resident, did you inform anybody, "You know, I need an accommodation for ADHD?"
    A:   When?
    Q:   When you were incoming as a new resident in the summer of 2009?

DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL
STATEMENT OF MATERIAL FACTS IN DISPUTE                                                    Page 1

A:     **No, not at that time.**

(Ex. A, p. 40.)

Q:     Did you at any point in time say to Doctor Napolitano or Doctor Jaffar in any of your meetings, "Hey, I don't know if you know," or something along these lines, "Hey, I don't know if you've checked my medical history or not, but I have ADHD and I need an accommodation?

A:     At what point?

Q:     At any point between the time you came in in, let's call it July 1 of 2009, to the point where you were terminated [March 18, 2010].

A:     **No, I did not.** But to be fair also, I only met with them maybe two times.

(Ex. A, p. 44.)

> University of Arkansas for Medical Sciences
> Practitioner Health Questionnaire
> (to be completed by resident physician)
>
> THIS IS A CONFIDENTIAL QUESTIONNAIRE
>
> Name (print): Brian Schwab
> Department: Anesth.
>
> Check the appropriate response:                                         Yes   No
> 1.  Are you aware of, or have there been any health impairments that might
>     affect your ability to perform professional and staff duties fully?       X

(Ex. A-5.)

Schwab contends that he filled out some form indicating he had ADHD, but he does not know how that form is processed (Ex. A, p. 39-40); he does not know how this form is utilized (Ex. A. p. 40); and, he assumed his program directors at UAMS would have access to that medical information. (Ex. A. p. 41-42.)

At resident orientation, Schwab indicated in his medical information that he did not need any physical accommodations—a statement consistent with his confidential questionnaire from April 2009. (Ex. K, Ex. 1-A and 1-B thereto; Ex. L.)

> Does employee need any physical accommodations?  ○ Yes  ○ No    No (06/23/2009 3:50:35 PM)

(Ex. K, Ex. 1-A thereto.)

**New Employee/Student Exam**
 Foreign born: USA
 NEMS category Patient Care Area
 History of latex sensitivity: No
 Does employee need any physical accomodations?: No
 Employee exam complete: Yes

(Ex. K, Ex. 1-B thereto.)

    2.    Whether Dr. Schwab made a request for reasonable accommodation. Having disclosed his ADHD to his program director's office, Dr. Schwab requested help from Dr. Jaffar during his VA surgical rotation (Declaration of Dr. Jaffar, Defs. Ex. C; Dr. Schwab notes from meeting, Ex. 10). Defendants failed to enter into an interactive process at that point. There is dispute regarding whether Dr. Schwab's request for help was sufficient to trigger the obligations for Defendants to begin the interactive process at that mid-January 2010 meeting.

Response: This is not a statement of fact, but a legal argument. The following statements contradict Dr. Schwab's position.

Q: Did you at any point in time say to Doctor Napolitano or Doctor Jaffar in any of your meetings, "Hey, I don't know if you know," or something along these lines, "Hey, I don't know if you've checked my medical history or not, but I have ADHD and I need an accommodation?

A: At what point?

Q: At any point between the time you came in in, let's call it July 1 of 2009, to the point where you were terminated [March 18, 2010].

A: **No, I did not.** But to be fair also, I only met with them maybe two times.

(Ex. A, p. 44.)

3. Whether Defendants failed to meet their requirement to attempt in good faith to provide reasonable accommodations (Schwab Depo. at 43, Ex. 6; Grievance Hearing Transcript at 8, Ex. 2). There is no dispute that Dr. Schwab made his disability known and complained that the program director's office had not provided reasonable accommodations. Defendants still did not enter into an interactive process to provide reasonable accommodations. (Defs. Ex. C, Doc. # 13-2; Defs. Ex. D-10, Doc. # 13-3). The fact that Defendants failed to initiate an interactive process after Dr. Schwab's termination was reversed creates a factual dispute as to whether they were operating in good faith in providing reasonable accommodations. Based upon the facts regarding Dr. Schwab's multiple attempts to obtain reasonable accommodations, which Defendants were aware of accommodations they could offer but failed or refused to offer them,

and the fact that they promised a response by close of business July 22, 2010, and failed to so provide, whether they were operating in bad faith is in dispute.

Response: This is not a statement of fact, but a legal argument. Defendants readopt herein argument made in Brief in Support of their Motion for Summary Judgment, pp. 23-31, and the exhibits referred to therein.

4.  Whether there is a causal connection between Dr. Schwab's exercise of protected rights and adverse actions is in dispute. Dr. Schwab contends that once he made a request for help under the ADA/Rehabilitation Act, adverse actions were taken against him, particularly that he was required to extend his residency term by four months, not given credit for months he had completed, had his offer for a PGY-2 contract year withdrawn, and told he was not an option to continue in the program after PGY-1. (Dr. Schwab letter dated July 26, Defs. Ex. D-10; D. Hoggard letter dated July 2, Defs. Ex. E-6). These facts coupled with the close temporal proximity provide a sufficient nexus for an inference that retaliation was a motivating cause.

Response: This is not a statement of fact, but a legal argument. Defendants readopt herein argument made in Brief in Support of their Motion for Summary Judgment, pp. 31-32, and the exhibits referred to therein.

5. Whether Dr. Schwab was provided with pre-termination process due him and whether the post-termination process regarding his reinstatement process was sufficient. (Schwab Depo., Ex. 6 at 36-43, 60-62 and 73).

Response: This is not a statement of fact, but a legal argument. Defendants readopt herein argument made in Brief in Support of their Motion for Summary Judgment, pp. 34-35, and the exhibits referred to therein.

Q: Are you contending that your post-termination grievance procedures as outlined in [GME Policy] 1.140 were deficient?

A: No.

(Ex. A, p. 88.)

6. Whether Defendants violated clearly established laws and acted unreasonably is disputed. Defendants knew, or should have known of Dr. Schwab's disability and it was obvious that he needed an accommodation. (Declaration of Dr. Jaffar, Defs. Ex. C; Schwab Depo. at 43, Ex. 6, Grievance Transcript Hearing at 8, Ex. 2). They failed to enter into an interactive process which was their legal duty. That failure deprived Dr. Schwab of his clearly established rights under the ADA/Rehabilitation Act, deprived him of his property interests without due process, and deprived him of his right to be free from illegal retaliation.

Response: This is not a statement of fact, but a legal argument. Defendants readopt herein argument made in Brief in Support of their Motion for Summary Judgment, pp. 39-41, and the exhibits referred to therein.

Respectfully submitted,

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES, by and through the University of Arkansas System, Board of Trustees, et al.

By: /s/MARK A. HAGEMEIER #94127
Associate General Counsel
University of Arkansas
    for Medical Sciences
4301 West Markham, Slot 860
Little Rock, AR 72205
(501) 686-7608
E-mail: mhagemeier@uams.edu

ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I, Mark A. Hagemeier, certify that on June 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing via e-mail to the following CM/ECF participants:

Denise Reid Hoggard, Esq.
Chisenhall, Nestrud & Julian, P.A.
400 West Capitol Avenue, Suite 2840
Little Rock, Arkansas 72201-3415

/s/MARK A. HAGEMEIER #94127
Mark A. Hagemeier
e-mail: mhagemeier@uams.edu