**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION**

**BRIAN SCHWAB, D.O., PLAINTIFF,**

**CASE NO. 4:11-cv-00011-BSM**

**UNIVERSITY OF ARKANSAS, ET AL., DEFENDANTS.**

# DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO RULE 56.1 STATEMENT OF UNDISPUTED FACTS

Come now the Defendants, by and through their counsel, Associate General Counsel Mark A. Hagemeier, and for their Reply to Plaintiff's Response to their Statement of Undisputed Facts (D.E. # 21) and Supplemented Response (D.E. # 25) filed in support of their Motion for Summary, state:

## I. INTRODUCTION

### A. Plaintiff Fails to Abide by Court's Scheduling Order Format

Plaintiff categorically and unequivocally failed to abide by the Court's Scheduling Order regarding the format of Summary Judgment Statement of Facts set forth in its Amended Final Scheduling Order dated April 1, 2011. This Court ordered that the format for the non-moving parties' statement of fact should take the following format:

> "In opposing a motion for summary judgment, the non-moving party shall format his or her statement of disputed (and undisputed) material facts pursuant to Local Rule 56.1. The non-moving/opposing party shall respond paragraph by paragraph to the statement of undisputed material facts submitted by the moving party. The responsive portion of the non-moving opposing party's statement shall repeat the statement verbatim as set forth in the moving party's statement and respond to it by admitting the statement or pointing out that portion of the statement, if any, he or she disputes. The non-moving/opposing party will state with particularity that portion of the allegation denied, citing to any evidentiary support for the denial.

For example:

| | |
|---|---|
| Moving Party | 1. Plaintiff began working for Defendant Employer on March 1, 2008. |
| Response: | 1. Plaintiff admits that Plaintiff began working for Defendant Employer on March 1, 2008." |

Throughout his original and supplemented Response to Defendants' Statement of Undisputed Facts (D.E. # 21 and #25), Plaintiff failed to set forth Defendants' statements verbatim; thus, Plaintiff muddies the analysis this Court must conduct, and most of the citations supplied to the Court are to Schwab's beliefs, assumptions, conclusions or legal argument. This court need not "mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006).

Further, mere personal, conjecture and speculation are insufficient to support an inference of discrimination. *See Palesch v. Missouri Comm'n on Human Rights*¸ 232 F.3d 626 (8th Cir. 2000); *Kneibert v. Thomson Newspaper, Mich. Inc.,* 129 F.3d 444, 455 (8th Cir. 1997) (party opposing summary judgment must provide sufficient probative evidence which would permit the court to rule in its favor rather engaging in conjecture and speculation).

B. Defendants Readopt Their Motion to Strike All Portions of Supplemented Record that Plaintiff Submitted to Court as Extra Material with Supplemental Response (D.E. #25-1 through 25-5)

Plaintiff's Supplemented Response (D.E. # 25), only supports certain paragraphs with citation authority. Defendants will address these below. However, for the reasons set forth in their Motion to Strike, Defendants again reiterate that through the Court's email of June 1, 2012, the Court requested only citation to authority in the record as it already existed, that is, through the filings of May 24, 2012. The Court did not authorize

additional supplementation of the record. Thus, Defendants request all supplemental documents filed along with Docket Entry 25 be stricken. Further, as set forth in their Motion to Strike, Defendants contend that all references to the Grievance Hearing (D.E.# 19-2 and/or 25-1) should be stricken, because this material is inadmissible hearsay as these are not sworn statements and the hearing tapes are not authenticated.

Defendants attempt to address the denials purportedly supported by Plaintiff's Supplemented Response to Defendants' Statement of Undisputed Facts (D.E. #25).

## II. DENIALS OF UNDISPUTED PLAINTIFF ADDRESSED

37. Like all incoming residents, Schwab participated in a resident orientation program in late June 2009. (Ex. B, ¶ 4.) Schwab failed to indicate to UAMS personnel that he needed an accommodation for ADHD.

Q: When you were inprocessing as a resident, did you inform anybody, "You know, I need an accommodation for ADHD?"
A: When?
Q: When you were incoming as a new resident in the summer of 2009?
A: **No, not at that time.**
(Ex. A, p. 40.)

Reply: Schwab admits that the language quoted above is correct. **Schwab did not request an accommodation at this time.** Schwab does not respond to the citations presented which are direct quotes from his deposition. Citations presented by Schwab (Schwab Depo, pp. 36-43; 60-62; 73) do not refute statement made. Further, the citations are full of Schwab's "assumptions" which are not admissible evidence. A review of the transcript reveals Schwab does not know how the Medical Questionnaire is utilized. Grievance hearing record should be stricken per the Motion to Strike.

38.     Schwab contends that he filled out some form indicating he had ADHD, but he

does not know how that form is processed (Ex. A, p. 39-40); he does not know how this

form is utilized (Ex. A. p. 40); and, he assumed his program directors at UAMS would

have access to that medical information.  (Ex. A. p. 41-42.)

        Reply:  Schwab does not respond to the citations presented which are direct

quotes from his deposition.  Citations presented by Schwab (Schwab Depo, pp. 36-43;

60-62; 73) do not refute statement made.  Further, the citations are full of Schwab's

"assumptions" which are not admissible evidence.  A review of the transcript reveals

Schwab does not know how the Medical Questionnaire is utilized.  Grievance hearing

record should be stricken per the Motion to Strike.


39.     The only medical record at UAMS is the computer input information given to

Melanie Clark, a nurse that performs the new employee and incoming resident

screenings, by Schwab on June 23, 2009.  Schwab indicated in his medical information

that he did not need any physical accommodations—a statement consistent with his

confidential questionnaire from April 2009.   (Ex. K, Ex. 1-A and 1-B thereto; Ex. L.)

        Reply:  Schwab has no response for Melanie Clark's affidavit.  He may have

filled out a Medical Questionnaire, but he does not know how that form is utilized.  (Ex.

A, p. 39-40.)  Schwab failed to take Clark's deposition.  Schwab cannot refute how the

Medical Questionnaire is utilized—for purposes of seeing whether a new employee needs

a physical accommodation.  Schwab indicated he did not need such an accommodation.

Schwab does not respond to the citations presented which are direct quotes from his

deposition.  Citations presented by Schwab (Schwab Depo, pp. 35-43; 60-62; 73) do not

refute statement made. Further, the citations are full of Schwab's "assumptions" which are not admissible evidence. A review of the transcript reveals Schwab does not know how the Medical Questionnaire is utilized. Grievance hearing record should be stricken per the Motion to Strike.

40. Even though Schwab was assigned an email account to communicate with his program directors (Ex. A, p. 45), and he knew they were his contacts (Ex. A., p. 46), Schwab admits that at no time during his residency did he inform Jaffar or Napolitano of his ADHD diagnosis or request an accommodation. (Ex. A, p. 44.)

Q: Did you at any point in time say to Doctor Napolitano or Doctor Jaffar in any of your meetings, "Hey, I don't know if you know," or something along these lines, "Hey, I don't know if you've checked my medical history or not, but I have ADHD and I need an accommodation?
A: At what point?
Q: At any point between the time you came in, let's call it July 1 of 2009, to the point where you were terminated [March 18, 2010].
A: **No, I did not.** But to be fair also, I only met with them maybe two times.
(Ex. A, p. 44.)

Reply: This is a direct quote from Schwab's deposition. Schwab does not respond to the citations presented which are direct quotes from his deposition. Citations presented by Schwab (Schwab Depo, pp. 36-43; 60-62; 73) do not refute statement made. Further, the citations are full of Schwab's "assumptions" which are not admissible evidence. A review of the transcript reveals Schwab does not know how the Medical Questionnaire is utilized. Grievance hearing record should be stricken per the Motion to Strike.

42. In September 2009, Schwab was trained by Dr. Gerry Ezell. On November 16, 2009, Ezell forwarded his evaluation to the Anesthesiology Department. (Ex. C-2.) Ezell wrote in his evaluation:

> Dr. Schwab frankly had a disappointing month. He is clearly an intelligent and caring physician, but his major problem is his 'know-it-all' attitude. He did the things he was instructed to do, for the most part, but his attitude over the month was one of clearly resenting being instructed. He has some very admirable attributes. He was always here early and stayed late without complaint, he worked hard, and seemed to learn a few things. He left the service on the final day before a formal check-out evaluation could be done. (Ex. C-2.)

Reply: Defendants do not contend this is the complete evaluation.

44. Schwab and Jaffar discussed a variety of subjects, and Jaffar inquired into Schwab's adjustment to Little Rock, whether Schwab had made friends, etc. During the course of this meeting, Schwab never mentioned that he had ADHD or needed an accommodation for it. (Ex. A, p. 44; Ex. C, ¶ 7; Ex. C-1).

Reply: This is a direct quote from Schwab's deposition and Jaffar's affidavit. The citations Schwab makes do not refute the citation as written.

46. On January 15, 2010 Napolitano and Jaffar met with Schwab for his semi-annual PGY-1 evaluation. Schwab described the meeting as "very cordial." (Ex. A., p. 57-58.)

Reply: This is a direct quote from Schwab's deposition and Jaffar's affidavit. The citations Schwab makes do not refute the citation as written.

48. Napolitano and Jaffar discussed Schwab's performance to date. Jaffar completed an evaluation form (Ex. B-1), and the only concerns or comments noted was that Schwab

was busy on the surgical service, upon which he was working at the time, but Schwab indicated that his "work hours are OK." At this January 15, 2010 meeting, Schwab did not disclose his diagnosis of ADHD or request an accommodation for it. (Ex. A, p. 58-64; Ex. B, ¶ 7; Ex. C, ¶ 8.)

Reply: None of the citations presented by Schwab refute the statement made. Schwab does not respond to the citations presented which are direct quotes from his deposition. Citations presented by Schwab (Schwab Depo, pp. 43-44; 59-62; 73; 158) do not refute statement made. Further, the citations are full of Schwab's "assumptions" which are not admissible evidence. Grievance hearing record should be stricken per the Motion to Strike.

49. In January 2010, Schwab was assigned a surgery rotation at the Veteran's Administration hospital. Schwab did not disclose his ADHD diagnosis or request an accommodation. (Ex. A, p. 57; Ex. G, ¶ 4; Ex. H, ¶ 4; Ex. I, ¶ 4)

Reply: None of the citations presented by Schwab refute the statement made. Citations presented by Schwab (Schwab Depo, pp. 43-44; 59-62; 73; 158) do not refute statement made. Further, the citations are full of Schwab's "assumptions" which are not admissible evidence. Grievance hearing record should be stricken per the Motion to Strike.

50. His attending physicians during this rotation were Parnell, Moseley, Mancino and Kim. In early March 2010, Drs. Parnell, Moseley and Mancino submitted an evaluation

form that failed Schwab. This evaluation was sent to Napolitano on or about March 10, 2010. (Ex. G-1.)

Reply: The citation does not refute the statement made.

56. Napolitano relayed his discussions with Kim, Parnell, Mancino and Copeland, a chief surgical resident, to Schwab. (Ex. B, ¶ 10; C, ¶ 6.)

Reply: None of the citations refute the statement made. Citations presented by Schwab (Schwab Depo, p. 71) is not a part of the record provided.

57. Napolitano proposed an immediate remediation plan of zero tolerance or Schwab would be dropped from the program, but Napolitano also indicated that he and Jaffar would present the situation to the CCC later that day. Again, Schwab neither indicated that he had an ADHD diagnosis, nor did he request a reasonable accommodation for ADHD. (Ex. B, ¶ 10; C, ¶ 6.)

Reply: None of the citations (Schwab Depo, p. 43) refute the statement made.

59. Jaffar and Napolitano presented the information regarding Schwab's January surgery rotation and his February Cardiology rotation. Copies of Schwab's surgery evaluation were reviewed by the Committee. (Ex. F; Ex. F-1.)

Reply: None of the citations refute the statement made.

60. The Committee discussed possible action plans but voted unanimously to terminate Schwab's position immediately due to the fact that the demonstrable behaviors

noted in the January 2010 V.A. surgery evaluation failed to meet ACGME competencies of professionalism, patient care and medical knowledge. As problems of this nature could ultimately lead to patient endangerment, Dr. Schwab's position was terminated immediately per GME policy. (Ex. F; Ex. F-1.)

Reply: None of the citations refute the statement made.

62. UAMS Graduate Medical Education Policy 1.420 states that:

> 5. Immediate dismissal can occur at any time without prior notification in instances of gross misconduct, including, <u>but not limited to</u>, theft of money or property; physical violence directed at an employee, visitor or patient; use of or being under the influence of alcohol, or controlled substances, while on duty; <u>patient endangerment</u>; illegal conduct.
>
> 6. When a resident is dismissed, the program director shall provide the resident with a written <u>letter of dismissal</u> stating the reason for the action and the date that the dismissal becomes effective. A copy of this letter shall be forwarded to the Associate Dean for GME and the Assistant Dean of Housestaff Affairs. (Ex. E-2)

Reply: Defendants do not contend this is the entire policy.

63. Prior to Schwab's even beginning his post-termination grievance process - that is by April 4, 2010 - Schwab applied for, interviewed for, and was accepted to a three-year family-residence internship at St. John's Episcopal Hospital ("St. John's") in Rockaway, New York. (Ex. A, page 15-16; Ex. A-1).

Reply: None of the citations refute the statement made.

66. Schwab did not believe his post-termination process was deficient.

Q: **Are you contending that your post-termination grievance procedures as outlined in [GME Policy] 1.140 were deficient?**
A: **No.**

(Ex. A, p. 88.)

Reply:  Citations presented by Schwab (Schwab Depo, pp. 85-86; 144-145; 109-110; 148) do not refute statement made.

70.     At no time in this meeting [informal meeting on April 15, 2010] did Schwab mention his ADHD diagnosis or request an accommodation.  (Ex. B, ¶ 15; Ex. B-5; Ex, C ¶ 10; Ex. F, ¶ 5.)

Reply:  Citations presented by Schwab (Schwab Depo, pp. 36-43; 60-62; 73) do not refute statement made.

73.     Prior to this time, Schwab provided no information to Napolitano, Jaffar or any other person working with him in the residency program at UAMS with information that he previously received a diagnosis of ADHD.

Reply:  Citations presented by Schwab (Schwab Depo, pp. 36-43; 60-62; 73) do not refute statement made.

74.     On June 16, 2010, UAMS conducted a grievance hearing regarding Schwab's grievance.  (Ex. D-6.)  At the hearing, Schwab discussed his ADHD.  This was the first time Napolitano heard Schwab state he had ADHD.  (Ex. B, ¶ 17, Ex. C, ¶ 12.)

Reply:  Citations presented by Schwab (Schwab Depo, pp. 36-43; 60-62; 73) do not refute statement made.

76. Specifically, the grievance panel stated "four people voted that they did not feel the policy was followed and two people voted that they felt the policy was followed." (Ex. D-6.)

Reply: This is a direct quote from the Exhibit at issue.

77. The grievance panel noted:

> For those who felt that the policy was followed, the following comments were made. The incidents described in which Dr. Schwab was to round on patients on the V.A. surgery service and failed to do so in a timely fashion and failed to stay to present patients he had seen on the cardiology consultation service were felt to be indicative that he was endangering patients care. It was also noted that he had poor insight into his own problems and did not take responsibility for his actions. (Ex. D-6.)

Reply: This is a direct quote from the Exhibit at issue.

78. Even for those who felt that the policy was not followed, those panel members noted:

> They did not feel that there was evidence of patient endangerment clearly demonstrated by the witnesses. They agreed that there was theoretical concern about patient endangerment given [Dr. Schwab's] actions, but no evidence of such endangerment was clearly provided." (Ex. D-6.)

Reply: This is a direct quote from the Exhibit at issue.

79. Fiser accepted the grievance panel's determination in a letter dated June 30, 2010. (Ex. D-7.) Fiser noted: "It appears to me that Dr. Napolitano's concerns over Dr. Schwab's performance were warranted." (Ex. D-7.)

Reply: This is a direct quote from the Exhibit at issue.

80. Fiser stated that the grievance panel proposed two "potential" remediation options for Dr. Schwab:

> (1) Giving Dr. Schwab the option to resign from the program; or
> (2) Allowing him to return on probation to finish the required amount of training to receive credit for his PGY-1 year.
> I accept the grievance panel's recommendation and would expect Dr. Napolitano and the Department of Anesthesiology to create any reasonable supervision and remediation plan that they believe would allow Dr. Schwab to finish his PGY-1 year and ensure patient safety. (Ex. D-7.)

Reply: This is a direct quote from the Exhibit at issue.

82. On July 2, 2010, Schwab's counsel, Denise Hoggard, wrote "requesting a reasonable accommodation for [Schwab's] disability during his completion of PGY-1 [year] with the UAMS Anesthesiology Department." (Ex. E-6.)

Reply: This is a direct quote from the Exhibit at issue.

83. Hoggard's letter was received and reviewed on July 6, 2010 at UAMS (Ex. E-6; E-8).

Reply: Plaintiff's denial cites to the same citation as provided by Defendants.

87. UAMS noted that Schwab could begin his Anesthesiology internship either on July 12 or August 2, 2010; that the remediation program would last six months; that Schwab would not repeat a general surgery rotation at the V.A., but would participate in another rotation; that Schwab would be paid pursuant to his current contract rate; and, that if he successfully completed his PGY-1 year he would be promoted to the PGY-2 year. (Ex. E-8.)

Reply:  Plaintiff's denial cites to the same citation as provided by Defendants.

88.     As further accommodations, UAMS noted that Schwab could "check with his attending physician in the middle of each of his rotations to discuss how he was doing" and that "Dr. Schwab would then meet with either Dr. Jaffar or Dr. Napolitano thereafter so that he could discuss any problems that were arising in the middle of a rotation."  (Ex. E-8.)

Reply:  Plaintiff's denial cites to the same citation as provided by Defendants.

89.     On July 9, 2010, Schwab appealed the length of his remediation to Fiser.  (Ex. D-8.)

Reply:  Citations presented by Schwab (Schwab Depo, pp. 143-145; 148-149; 156; 158) do not refute statement made.  Further, the citations are full of Schwab's legal conclusions regarding what he deems to be retaliation.  Defendants contend that Plaintiff's self-serving, legal conclusions are not evidence for summary judgment purposes.

90.     On July 13, 2010, Fiser informed Schwab that the six-month remediation program was reasonable, and that her review of the accommodation letter of July 7, 2010 (Ex. E-8) also appeared to be reasonable.   (Ex. D-9.)

Reply:  Plaintiff's denial cites to the same citation as provided by Defendants.

91.     On July 16, 2010, Hoggard e-mailed Hagemeier with another more specific

accommodation request—Schwab wanted UAMS to employ New York state law to the

hours that he would work at UAMS.  (Ex. E-9.)

        Reply:  Plaintiff's denial cites to the same citation as provided by Defendants.


93.     Hagemeier responded to the July 16 e-mail with an initial e-mail response on July

22, 2010.  (Ex. E-4.)

        Reply:  Plaintiff's denial cites to the same citation as provided by Defendants.

The statement says a further response will come by close of business, "I think."


94.     Before any lengthier response could be sent by UAMS, Schwab unilaterally

informed Fiser via letter dated July 26, 2010 that he would not be returning to UAMS

(Ex. D-10), and Fiser informed Schwab that she had received his letter of July 26, 2010

(Ex. D-11).

        Reply:  Citations presented by Schwab do not refute statement made.


96.     Clardy and Hagemeier were still working on a response to Hoggard's July 16

email (Ex. E-10) when Schwab informed Fiser of his decision not to return to UAMS.

Clardy did not believe he could promise the New York state hours in an acute patient

situation.  (Ex. E, ¶ 10.)

        Reply:  Citations presented by Schwab do not refute statement made.

97. Since patient safety always comes first, Clardy did not believe that we could guarantee Schwab work hours mandated by New York state law, since all other residents in the UAMS Anesthesiology Department would not be working under those hours. (Ex. E, ¶ 10.)

Reply: Same citation as paragraph 96. Citations presented by Schwab do not refute statement made.

98. The UAMS Anesthesiology Department might not have been able to provide patient coverage--at least as Clardy understood Schwab's request. (Ex. E, ¶ 10.)

Reply: Same citation as paragraph 96. Citations presented by Schwab do not refute statement made.

99. UAMS recapitulated the interactive process via letter dated July 26, 2010. (Ex. E-5.)

Reply: Same citation as paragraph 96. Citations presented by Schwab do not refute statement made.

Respectfully submitted,

UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES, by and through the University of Arkansas System, Board of Trustees, et al.

By: /s/MARK A. HAGEMEIER #94127
Associate General Counsel
University of Arkansas
for Medical Sciences
4301 West Markham, Slot 860
Little Rock, AR 72205
(501) 686-7608
E-mail: mhagemeier@uams.edu

ATTORNEY FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I, Mark A. Hagemeier, certify that on June 6, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing via e-mail to the following CM/ECF participants:

Denise Reid Hoggard, Esq.
Chisenhall, Nestrud & Julian, P.A.
400 West Capitol Avenue, Suite 2840
Little Rock, Arkansas 72201-3415

/s/MARK A. HAGEMEIER #94127_
Mark A. Hagemeier
e-mail: mhagemeier@uams.edu